GEORGE MARTIN, Appellant, v. A. E. & O. D. SHANNON, Administrators of the Estate of D. H. SHANNON, Deceased.

**Transaction with Decedent.** It was alleged that plaintiff, in 1883, sold to decedent a stock of goods to be paid for when defendant sold the same, which was done in 1889. A claim for the purchase price was filed in 1889. Defense, general denial and statute of limitations. Plaintiff was asked, "Do you know about what the goods were that were traded to him? From what you saw in the store there about what per cent of the goods traded for remained in the store?" *Held,* to be inadmissible as being personal transaction with decedent.

SAME: STATUTE OF LIMITATIONS. Plaintiff was also asked, "From what you saw in the store there (in 1885) you may state about what amount of goods you saw that had formerly been owned by Carpenter of Beloit," and it was proposed to show that Carpenter never traded plaintiff any other goods. *Held,* this was all material as tending to show that the claim was not within the statute of limitations, because no action accrued until the stock was sold, which was in 1889; and none of it stated a personal transaction.

EVIDENCE: INCOMPETENT. That decedent was in the habit of paying his debts and left his estate in good condition was immaterial.

*Appeal from Lyon District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, OCTOBER 24, 1894.

PROCEEDING to establish a claim against the estate of D. H. Shannon, deceased. Trial to a jury. Verdict and judgment for defendants. Plaintiff appeals. REVERSED.

*J. M. Parsons* for appellant.

*E. C. Roach* for appellees.

KINNE, J.—I. November 26, 1889, the plaintiff filed a claim for three thousand, eight hundred and twenty dollars against the estate of D. H. Shannon, deceased. The petition in the action to enforce said claim, in substance, charged that in 1883, plaintiff sold and delivered to D. H. Shannon, a stock of hardware, of the value of four thousand dollars, which said Shannon agreed to pay for when finally disposed of; that said stock was so finally disposed of by Shannon in February, 1889, and that no part of the purchase price of the goods had been paid, except one hundred and eighty dollars; that Shannon died in July, 1889, and there was due plaintiff on said claim three thousand, eight hundred and twenty dollars, with interest. In another count the same facts are pleaded, except it is alleged that a part of the goods were destroyed by fire, and the insurance thereon, amounting to two thousand,

five hundred dollars, was collected by deceased, which fact was unknown to plaintiff until January, 1890. The defendants denied all the allegations of the petition, and pleaded the five-year statute of limitations thereto, and, by way of counterclaim, averred that plaintiff was indebted to deceased on account for merchandise in the sum of one hundred and fifty-eight dollars and ninety-five cents, for which sum, with interest, they demanded judgment. The cause was tried to a jury, and a verdict returned for the defendants for the amount claimed on the counterclaim; and a judgment was rendered thereon against the plaintiff, and for costs.

II. It appears that in the fall of 1883, one Carpenter, who resided in South Dakota, traded to plaintiff a stock of hardware, and that the decedent, Shannon, purchased said stock of plaintiff. The goods at the time were in Beloit, and were removed by Shannon to his store in Rock Rapids, Iowa. In the course of the trial the plaintiff, as a witness, was asked: "Do you know about what the goods were that were traded to him?" "You may state, Mr. Martin, from what you saw in the store there about what per cent of the goods traded for by Shannon remained in the store." These questions were objected to as incompetent, because relating to a personal transaction between the plaintiff and deceased. The objections were sustained, and an exception taken. We do not think there was any error in these rulings. The first question clearly refers directly to the particular goods traded to the deceased, and was touching a personal transaction, within the contemplation of the statute. The last question, as framed, was for the same reason objectionable. The witness was also asked: "From what you saw in the store there, you may state if you can, say about what amount of goods you saw that had formerly been owned by E. E.

Carpenter, of Beloit, Iowa." The same objection was interposed to this question, and, further, that it was immaterial. Pending a ruling, counsel for plaintiff stated to the court that he proposed to show that Carpenter never traded plaintiff any other goods. The objection was sustained, and the plaintiff excepted. Clearly, the offered evidence, in the light of counsel's proposal, was not immaterial. By it, it was sought to show that the identical goods, or a part of them, which Carpenter had traded plaintiff, were seen by plaintiff in the store of decedent. That was in the year 1885, and, if true, showed that at that date all the goods which plaintiff .claimed to have sold deceased had not been disposed of, and as to them his cause of action had not then accrued, and this was within five years from the time this action was begun. The purchase of the goods by deceased from plaintiff had already been shown by proper testimony. Was the offered testimony objectionable under section 3639 of the Code? Under the provisions of that section, the witness being a party attempting to enforce a claim against the estate of another party to a contract, who was then deceased, he could not testify to any personal transaction or communication between him and said deceased. As the matter inquired about was not a communication, we are to determine whether or not it was a transaction. By a "personal transaction" the statute means some business or negotiations between two or more individuals. Now the question called for no act or transaction between plaintiff and deceased. In principle, the case is not different from *McElhenney v. Hendricks*, 82 Iowa, 657, 48 N. W. Rep. 1056, where it is said, "The statute does not exclude the proof of facts from which, by inference, other facts may be found." We may presume that the witness, if permitted to answer, would have testified that he saw certain of the goods which he had purchased of Carpenter, and which he

had shown by other competent evidence were by plaintiff sold to the deceased; and thus while the proposed evidence would tend to establish a liability against the estate of deceased, yet it would be merely proving facts from which, by inference, other facts might be found. That such evidence is admissible, we have no doubt. We have held that in a proceeding by a son to establish a claim against his father's estate the son may testify touching the condition of his father, and the care and attention he required. *Marietta v. Marietta*, 90 Iowa, 201, 57 N. W. Rep. 703. Now, such facts form a link in the chain of evidence necessary to establish a liability, though no contract could be implied from them alone. So, in the case at bar, if the plaintiff had testified that he saw some of the goods, at the time inquired about, in the decedent's store, no contract could be implied therefrom; and yet it would have been evidence which, in view of other evidence that had been admitted, might tend to establish plaintiff's case. As asked, we think the question was not objectionable. It did not call for evidence relating to a personal transaction. The proposed evidence was of fact resting outside of, and independent of, any personal transaction. It was touching a fact ascertainable from observation alone. See *Sankey v. Cook*, 82 Iowa, 125, 47 N. W. Rep. 1077; *Denning v. Butcher*, 91 Iowa, 425, 59 N. W. Rep. 69; *Gable v. Hainer*, 83 Iowa, 457, 49 N. W. Rep. 1024; *Dysart v. Furrow*, 90 Iowa, 59, 57 N. W. Rep. 645.

III. Witness Thompson, for defendant, was permitted to testify, over plaintiff's objection, as to what the decedent's habits were as to paying his debts; as to his financial condition, and the condition of his estate when he died; and that he did not know of any indebtedness of deceased. All this evidence was improper. What the witness said might all be true, and still deceased might have been

indebted to plaintiff. It will not do to say that because a man is in the habit of paying his debts, and dies leaving a good estate, such facts show, or even tend to show, that he was not indebted. They were not only wholly immaterial to the issue, but prejudicial to plaintiff. For the reasons given, the judgment must be REVERSED.