Catherine **WRIGHT**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 93 Civ 3236 (VLB).

United States District Court,
S.D. New York.

Nov. 4, 1994.

Joseph E. Ruyack III, McCormac, Damiani, New City, NY, for plaintiff.

Susan D. Baird, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This suit, brought under the Federal Tort Claims Act, 28 USC 1347, 2671 *et seq,* arises out of a fall leading to personal injuries to a guest at a wedding ceremony at the Cadet Chapel at the United States Military Academy at West Point. When moving toward the exit on July 18, 1992, plaintiff has testified that her high heel caught in an aperture in a ventilation grate approximately ½ inch by ½ inch in the center aisle of the Chapel, causing her fall and injuries. The aisle was covered by a runner placed by a contractor arranged for by the bride; plaintiff named the contractor as a defendant and the United States cross-claimed against the contractor, but all claims against the contractor were subsequently dismissed by consent.[1]

Plaintiff moves for summary judgment as to liability; the United States cross-moves for summary judgment on the ground that decisions regarding the Chapel floor are a "discretionary function" under 28 USC 2680(a) which bars liability for discretionary acts. Both motions are denied.

### II

The discretionary function exemption is intended to protect public policy objectives. *United States v. S.A. Empresa (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984); *Andrulonis v. United States,* 952 F.2d 652 (2d Cir.1991). It would run counter to the discretionary function exemption to second-guess or micromanage the kinds of steps appropriate to maximize safety in government facilities, even where the decisions are made below the policy level. *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *United States v. SA Empresa (Varig Airlines), supra.*

Within that broad discretion, reasonable steps of a type determined by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary. *Andrulonis v. United States,* 952 F.2d 652 (2d Cir.1991); see also *Indian Towing v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). For example, the management of a facility such as the Chapel could choose to retain the ventilation grates involved here as the best way to heat the Chapel, but substitute a finer grate or as an emergency measure to post a large prominent attractive map of the Chapel showing portions of the floor which those with stiletto heels may freely traverse contrasted with those such guests should approach with care.

### III

State law, while not controlling with regard to the discretionary function exemption, *In re Agent Orange,* 818 F.2d 194, 201 (2d Cir.1987), is applicable to claims of negligence under the Federal Tort Claims Act. In this instance the same conclusion would appear to flow regardless of whether state or federal law is applied. See *Strehle v. United States,* 860 F.Supp. 136 (S.D.N.Y.1994) (application of admiralty law to death of civilian seaman on government vessel because of failure to repair winch).

Such authority as is available in published decisions is consistent in adopting a test that (a) unprotected apertures known to be present and allowed to remain with no warnings, located in places people are expected to walk, constitute an unreasonable and hence negligent risk, whereas (b) if the hazard is isolated or not known, liability is absent. *Johnson v. Hartford Accident &*

---

1. Since the contractor is no longer a party to the case and no rulings with respect to its conduct have been made, there is no occasion to retain its name in the caption of this memorandum order, thereby placing that name in various data bases.

*Indemnity Co*, 476 So.2d 570 (Ct.App.La. 1985); *Shipp v. City of Alexandria*, 395 So.2d 727 (La.1981); *Williams v. Terminal RR*, 399 S.W.2d 139 (Mo.Ct.App.1966); *Blakeney v. Assoc. Subdivisions*, 97 R.I. 34, 195 A.2d 234 (R.I.1963); see generally Restatement of Torts (Second) § 344.

## IV

■■■ The United States argues that negligence on the part of plaintiff in failing to look down with care when traversing the floor of the Chapel constitutes the exclusive proximate cause of the accident. See *Holmes v. Securities Investor Protection Corp*, —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). This contention cannot support the defendant's motion for summary judgment since a reasonable factfinder could readily find that both parties were negligent, thus leading to division of damages under comparative negligence rules. See NYCPLR 1411 & Practice Commentary (McKinney's Consolidated Laws); *Arbegast v. Board of Education*, 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985); *TIAA v. Coaxial Communications*, 799 F.Supp. 16, 19–21 (S.D.N.Y.1992). The likelihood that either party would be responsible for approaching 100% of any negligence involves is far from overwhelming. Where negligence of one party creates conditions leading another's behavior to lead to injury, the predisposing party may share responsibility. See *Braun v. Soldier of Fortune Magazine*, 968 F.2d 1110 (11th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993).

## V

■■■ Insofar as the papers filed indicate, although photographs of plaintiff's shoes

were provided, the spike heeled shoes allegedly involved in plaintiff's accident have not been produced or examined by an expert for any party able to compare the indentations on the heels of the shoes, which would appear to be necessarily caused by scraping against the metal of the apertures in the floor, with what would be produced by the grate in the Chapel, and to evaluate whether the locations, angles, and depth of such indentations match those which would be produced if the accident occurred as claimed. Without such analysis by governmental or neutral experts, it is difficult to evaluate the likelihood that the accident occurred in the manner described by plaintiff.[2]

SO ORDERED.

---

**2.** The record contains no reference to whether or not the shoes were available or inspected. The indentations shown in plaintiff's exhibit appears to suggest that both of plaintiff's shoes were the subject of an indentation. Whether it would be possible for a fall to occur as a result of both feet having been caught in a grate simultaneously has never been analyzed.

Were the shoes to be unavailable, the circumstances of its disappearance might be relevant to whether or not an adverse inference against plaintiff would be justified. See *Baxter v. Palmigiano*, 425 U.S. 308, 316–20, 96 S.Ct. 1551,

1557–59, 47 L.Ed.2d 810 (1976); *Gray v. Great American Recreation Ass'n*, 970 F.2d 1081, 1082 (2d Cir.1992); *Scott v. Kelly*, 962 F.2d 145, 146 (2d Cir.1992); *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988); *Fera v. Roche*, 147 F.R.D. 58 (S.D.N.Y.1993); *Rivera v. O'Neill*, 146 F.R.D. 93 (S.D.N.Y.1993). Were the shoes to be missing without an adequate reason for its disappearance, plaintiff's claim might, absent other corroboration, become "implausible" and not adequately supported under *Matsushita v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).